

# IN THE
# Indiana Supreme Court

Supreme Court Case No. 25S-PL-103



FILED

Dec 17 2025, 1:14 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## Taliyah Brooks
*Appellant (Defendants below),*

—v—

## USA Track & Field, Inc.,
*Appellee (Plaintiff Below).*

---

Argued: June 26, 2025 | Decided: December 17, 2025

Appeal from the Marion Superior Court

No. 49D12-2211-PL-41124

The Honorable Patrick J. Dietrick, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 23A-PL-1685

---

**Opinion by Justice Massa**

Chief Justice Rush and Justices Slaughter and Molter concur.
Justice Goff dissents with separate opinion.

**Massa, Justice.**

This case concerns application of the final judgment rule and the order it brings to civil litigation when consistently applied.

A gifted athlete competed for a coveted spot on the 2020 United States Olympic Team in Track and Field. The team is chosen every four years at a meet known as the Olympic Trials, organized and conducted by USA Track and Field, the sport's domestic governing body headquartered in Indianapolis. The 2020 Olympic Trials were held in intense heat in Eugene, Oregon in June 2021, as the Olympics were delayed a year due to the Covid pandemic. On the second day of the heptathlon event, Appellant Taliyah Brooks suffered heat related injuries that prevented her from making the Olympic team. She sued USATF, seeking a declaratory judgment to invalidate a release she signed prior to the competition, with an eye toward pursuing tort claims if she prevailed.

The trial court granted summary judgment for USATF and against Brooks, and issued its orders before Brooks brought any tort claims against USATF. Two days after the trial court issued its final judgment, and a few days before the statute of limitations for her tort claims expired, Brooks moved to amend her complaint. The trial court denied her motion. Because Brooks moved to amend *after* final judgment, we affirm the trial court's denial of her motion. Moreover, we take this opportunity to clarify that Indiana Trial Rule 15(A) does not apply after final judgment.

## Facts and Procedural History

Taliyah Brooks is a heptathlete[1] and member of USATF. As part of her online application to compete at the Olympic Trials, Brooks signed a waiver and indemnity agreement ("Agreement").

---

[1] A heptathlete competes in a seven-event track and field competition. *Heptathlon*, https://www.merriam-webster.com/dictionary/heptathlon (last visited December 17, 2025).

Sections 2 and 4 of the Agreement set forth the waiver and indemnity provisions, respectively.

> Section 2.
>
> I understand and acknowledge that participation in track & field, road racing, race walking, cross-country, mountain, ultra, and trail running Events is inherently dangerous and represents an extreme test of a person's physical and mental limits. I understand and acknowledge the risks and dangers associated with participation in the Event and sports of track & field and related activities, including without limitation, the potentially serious bodily injury, sickness and disease (including communicable disease), permanent disability, paralysis and loss of life; loss of or damage to equipment/property; exposure to extreme conditions and circumstances; contact with other participants, spectators, animals or other natural or man-made objects; dangers arising from adverse weather conditions; imperfect course or track conditions; land, water and surface hazards; equipment failure; inadequate safety measures; participants of varying skill levels; situations beyond the immediate control of the Event Organizers (as defined in Section 4 below); and other undefined, not readily foreseeable and presently unknown risks and dangers ("Risks"). I understand that these Risks may be caused in whole or in part by my own actions or inactions or the actions or inactions of others participating in or organizing the Event, and **I hereby expressly assume all such Risks and responsibility for any damages, liabilities, losses or expenses which I incur as a result of my participation in any Event except to the extent caused by the gross negligence and/or willful misconduct of any of the Released Parties** (as defined in Section 4 below).

[Appellant's App. Vol. VI at 165 (emphasis added)].

Section 4.

I hereby release, waive and covenant not to sue, and further agree to indemnify, defend and hold harmless the following parties, as relevant and applicable in each instance: USATF, its members, clubs, associations, sport disciplines and divisions; United States Olympic Committee (USOC); the event directors, the host organization and the facility, venue and property owners or operators upon which the Event takes place; and any other organizers, promoters, sponsors, advertisers, coaches and officials for this Event; law enforcement agencies and other public entities providing support for the Event; and each of their respective parent, subsidiary and affiliated companies, officers, directors, partners, shareholders, members, agents, employees and volunteers (individually and collectively, the "Released Parties" or "Event Organizers"), with respect to any liability, claim(s), demand(s), cause(s) of action, damage(s), loss or expense (including court costs and attorneys' fees) of any kind or nature ("Liability") **which may arise out of, resulting from, or relate in any way to my participation in the Event, except to the extent caused by the gross negligence and/or willful misconduct of any of the Released Parties.** I further agree that if, despite this Agreement, I, or anyone on my behalf, makes a claim for Liability against any of the Released Parties, I will indemnify, defend and hold harmless each of the Released Parties from any such Liabilities which may be incurred as result of such claim, **except to the extent caused by the gross negligence and/or willful misconduct of any of the Released Parties**, as relevant and applicable in each instance.

[Appellant's App. Vol. VI at 165 (emphasis added)].

The heptathlon trials were conducted over two days. After day one, Brooks stood second, well on her way to securing a spot on the Olympic team. But on the second day of the competition, she passed out on the track where surface temperatures exceeded 140 degrees Fahrenheit. She was unable to complete the event, and her Olympic dreams were dashed. She sought redress against USATF in court.

On November 29, 2022, Brooks filed a declaratory judgment action against USATF in the Marion Superior Court asking it to declare the Agreement unenforceable and issue an injunction to that effect. In April 2023, Brooks moved for partial summary judgment on the issue of whether the Agreement was an unenforceable contract of adhesion under Oregon law. She argued that, because of the Agreement's indemnity provision, she needed the trial court to enjoin enforcement of the contract before she could bring tort claims against USATF. Brooks sought an expedited ruling so she could potentially bring her tort claims without fear of indemnification before the statute of limitations expired in June 2023.

After USATF filed a motion to dismiss in May 2023, the trial court held an emergency pre-trial hearing where it asked if the parties might reach a tolling agreement to stay the statute of limitations. USATF stated that entering a tolling agreement would harm its ability to name nonparties and thus would not agree. The trial court inquired whether a summary judgment ruling was a prerequisite to Brooks' ability to amend her complaint to add a tort claim. USATF said it was not. The trial court asked Brooks what prevented her from amending her complaint *at that time*. She responded she needed a declaration that the Agreement was unenforceable *before* she brought tort claims, or else she might be subject to the financial exposure of the Agreement's indemnification provision—which could be ruinous.

In June of 2023, USATF filed its response and cross-motion for summary judgment. It argued the waiver was enforceable under controlling Indiana law. Brooks filed her response as well as a cross-motion for summary judgment under Indiana law. She requested a ruling by June 24, 2023—two days before the statute of limitations expired. As

part of its response, USATF admitted the Agreement did not bar claims for gross negligence, recklessness, or willful conduct, though no such claims had been brought.

On June 21, 2023, the trial court granted USATF's cross-motion for summary judgment and denied Brooks' motion for partial summary judgment ("Summary Judgment Orders"). On June 23, Brooks filed three motions: (1) a motion to certify the trial court's orders for interlocutory appeal, (2) a motion to amend her complaint to add parties and claims for negligence, gross negligence, recklessness, and willful and wanton conduct, and (3) a motion to stay the proceedings on her proposed tort claims. USATF opposed the motion to amend and to stay, arguing they were moot because final judgement had been issued. While her motions were pending, Brooks filed a notice of appeal of the trial court's Summary Judgment Orders. The next day, the trial court denied Brooks' three pending motions; she then appealed that order.

The Court of Appeals held oral argument during which Brooks' counsel conceded the trial court issued final judgment. The Court of Appeals affirmed in part and reversed in part. *Taliyah Brooks v. USA Track & Field, Inc.*, 247 N.E.3d 1 (Ind. Ct. App. 2024). It found the Agreement enforceable and affirmed the trial court's Summary Judgment Orders. But, applying Trial Rule 15(A), it also found the trial court abused its discretion in denying Brooks' motion to amend her complaint and remanded the case to the trial court. ("We next turn to Brooks' challenge to the July 2023 Order. Brooks argues that the trial court abused its discretion by denying her motion to amend her complaint under Trial Rule 15(A). We agree." *Id.* at 19.).

We granted transfer, vacating the Court of Appeals' opinion in *Brooks v. USA Track & Field, Inc.*, 247 N.E.3d 1 (Ind. Ct. App. 2024). *See* Ind. Appellate Rule 58(A).[2]

# Standard of Review

We typically review a trial court's grant or denial of a motion to amend the pleadings for abuse of discretion. *See Matter of Sarkar*, 84 N.E.3d 666, 675 (Ind. Ct. App. 2017) (The trial court "retains broad discretion in granting or denying amendments to pleadings," and "amendments should be liberally allowed, while giving proper regard for any prejudice to the nonmoving party."). However, this case turns on a fundamental question of law. Did the trial court even *have* discretion to grant a motion to amend in these circumstances? Finding this to be a pure question of law, we review *de novo* and find the trial court had no such discretion. *Horton v. State*, 51 N.E.3d 1154, 1157 (Ind. 2016).

# Discussion and Decision

We first address whether a party can amend their complaint after final judgment has been issued. Consistent with long-standing Indiana and federal precedent, we hold a party may not. Therefore, we find the trial court did not abuse its discretion in denying Brooks' motion to amend her complaint—rather, the trial court had no discretion, and denial was the only appropriate outcome. Then, we clarify that Indiana Trial Rule 15(A) does not apply after final judgment.

---

[2] We granted transfer to address whether the trial court erred in denying Brooks' motion to amend. As to the Court of Appeals' treatment and analysis of the Summary Judgment Orders, we summarily affirm. *See* Ind. Appellate Rule 58(A)(2) (providing that portions of a Court of Appeals' opinion summarily affirmed by this Court "shall be considered as Court of Appeals' authority.").

# I.  The Trial Court did not Err in Denying Brooks' Motion to Amend her Complaint

Ind. Appellate Rule 2(H) defines a "final judgment" as one disposing of all claims as to all parties; one in which the court directs final judgment as to fewer than all issues, claims or parties under Trial Rule 54(B) or 56(C); one deemed final under Trial Rule 60(C); a ruling on a motion to correct error under Trial Rule 59 or Criminal Rule 16; or a judgment otherwise deemed final by law.

A final judgment "disposes of all issues as to all parties, to the full extent of the court to dispose of the same, and puts an end to the particular case as to all of such parties and all of such issues." *Bueter v. Brinkman*, 776 N.E.2d 910, 912–13 (Ind. Ct. App. 2002) (quoting *Hudson v. Tyson*, 383 N.E.2d 66, 69 (Ind. Ct. App. 1978)). "A final judgment reserves no further question or direction for future determination." *Thompson v. Thompson*, 286 N.E.2d 657, 659 (Ind. 1972). The order shows "distinctly, and not inferentially, that the matters litigated have been disposed of in favor of one of the parties and the rights of the parties have been finally adjudicated." *Montgomery, Zukerman, Davis, Inc. v. Chubb Grp. of Ins. Cos.*, 698 N.E.2d 1251, 1253 (Ind. Ct. App. 1998). Even where the trial court's order "lacks some of the details or formalities generally required in a judgment," it is nevertheless a final judgment if it "disposes of all claims of all of the parties." *Id.*

As this Court recently explained, "[r]espect for the finality of judgments is . . . crucial to the efficient functioning of our legal system. Finality conserves limited resources, provides certainty and stability, and protects the interests of parties by enabling closure and reducing prolonged litigation." *Auto. Fin. Corp. v. Liu*, 250 N.E.3d 406, 408 (Ind. 2025). Here, the trial court issued final judgment in favor of USATF, disposing of Brooks' *only operative claim*. While both parties have acknowledged the trial court

entered final judgment in June 2023,[3] they disagree on whether Brooks could still amend her complaint afterwards. She could not. Once the trial court issued the Summary Judgment Orders, Brooks' lawsuit was resolved. There was no longer a live complaint to amend.

Here, Brooks brought a complaint for declaratory and injunctive relief. After protracted litigation, including Brooks' first partial motion for summary judgment, the parties filed cross-motions for summary judgment.[4] The trial court granted summary judgment for USATF. The trial court's order states there were "no genuine issues of material fact and that [USATF] is entitled to judgment as a matter of law."[5] Brooks did not plead any claims that survived the trial court's ruling, including any cause alleging gross negligence, which would have survived the court's ruling on the enforceability of the Agreement, and the trial court entered final judgment in finding for USATF as a matter of law, thereby disposing of all issues as to all parties. *See Bueter*, 776 N.E.2d at 912–13.

No doubt, Brooks acted swiftly in moving to amend two days after the trial court's Summary Judgment Orders; however, she was still too late, because Indiana law regarding the doctrine of finality is clear. Under our laws, the result would be the same whether Brooks moved to amend one day or two years after final judgment. To find otherwise would convert a bright line rule to a discretionary exercise.

This result may seem harsh, but in hindsight, it was not inevitable. There were other avenues available to Brooks prior to final judgment. First, she could have moved to amend her complaint prior to a ruling on

---

[3] Brooks' counsel conceded that summary judgment for USATF was a final judgment at both appellate oral arguments. *See* Court of Appeals Oral Argument at 16:45–17:00; Indiana Supreme Court Oral Argument at 7:52-7:57.

[4] Ultimately, the trial court found the Agreement enforceable and granted USATF's motion for summary judgment, thereby defeating Brooks' arguments under Oregon and Indiana law.

[5] In denying Brooks' partial motion for summary judgment, the trial court's order said there "were genuine issues of material fact and Plaintiff Taliyah Brooks is not entitled to judgment as a matter of law." This error does not disturb our legal conclusion. The order granting USATF's cross-motion for summary judgment was a final judgment.

summary judgment and decided whether to proceed with any tort claims after the trial court's decision. And after final judgment, she had several days to file her tort claims under a separate cause number before the statute of limitations expired. Either way, the indemnity and the waiver provisions expressly excluded gross negligence and willful misconduct. This path was available irrespective of how the trial court ruled on the enforceability of the Agreement.

## II. Rule 15(A) Does Not Apply after Final Judgment

USATF further argues the trial court could not grant Brooks' motion to amend under Rule 15(A) because that rule does not apply when a final judgment has been entered. We agree.

Indiana Trial Rule 15(A) allows a party to "amend his pleading once as a matter of course at any time before a responsive pleading is served." Once the defendant files its answer, "a party may amend his pleading *only* by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." *Id.* (emphasis added).

Rule 15(A) accomplishes twin aims. The first aim is to provide predictability and encourage early amendment. Rule 15(A) allows a party to amend its complaint once—without leave of court—before the defendant responds. To some degree, amendment restarts a lawsuit—and the rule encourages amendment at an early stage of litigation. Rule 15(A)'s second aim is to ensure both litigants (who often encounter new, critical information during discovery) and the court have some flexibility. This flexibility allows meritorious claims to proceed when reasonable but also enables the court to deny amendment where it would be futile or unfairly prolong a case.

These policy considerations cease to apply after final judgment. At that point, the flexibility and discretion Rule 15(A) affords trial judges ends and a plaintiff may only amend his complaint if the judgment has been set aside or vacated under T.R. 59 or T.R. 60.

Thus, Rule 15(A) is not applicable where final judgment has been entered. This rule is well supported under Indiana law. The Court of

Appeals examined the issue in *Jackson v. Russell*, 491 N.E.2d 1017, 1020 (Ind. Ct. App. 1986), where it found amendment unavailable after final judgment. Recently, in *Starsiak v. Starsiak*, 246 N.E.3d 1229, 1236 (Ind. Ct. App. 2024), the Court of Appeals noted "In this situation, [Plaintiffs] filed their motion to amend their pleading after final judgment was entered. We have held under principles of finality of judgments that 'a plaintiff may not seek to amend his complaint after judgment unless he first has that judgment vacated or set aside under either T.R. 59 or T.R 60.'" (quoting *Leeper Elec. Servs., Inc. v. City of Carmel*, 847 N.E.2d 227, 231 (Ind. Ct. App. 2006)). *See also Johnson v. Levy Organization Dev. Co., Inc.*, 789 F.2d 601, 611 (7th Cir. 1986) (upholding trial court's ruling denying plaintiff's motion to amend his complaint where summary judgment had been entered against him and there was no case or controversy pending before the court). Brooks was in the same situation; the same rule applies.

This analysis tracks precedent of the United States Supreme Court, which earlier this year explained Federal Rule of Civil Procedure 15(A) "does not govern when, following a final judgment, the case is closed and there is no pending pleading to amend." *BLOM Bank SAL v. Honickman*, 605 U.S 204, 213 (2025); *see also Boyd v. Secretary, Dep't of Corr.*, 114 F.4th 1232, 1237 (11th Cir. 2024) ("[O]nce the court has entered final judgment, Rule 15(a) no longer applies and no amendment is possible unless the judgment is first set aside[.]"). The *BLOM* Court concluded that adopting a contrary approach "would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Id.* (quoting 6 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1489, p. 816 (3d ed. 2010)).

Brooks could have filed her motion to amend her declaratory judgment complaint to add her tort claims against USATF any time prior to the trial court's entry of final judgment and, pursuant to Ind. Trial Rule 15(A), such motion to amend may well have been granted. However, once the trial court issued summary judgment for USATF, which we have established was a final judgment, Brooks had no option but to file a motion to vacate or set aside the judgment, or separately file her tort claims under a new cause number (and she had several days to do so

before the statute of limitations expired). As Brooks failed to pursue these options, and because Rule 15(A) did not apply, the trial court did not abuse its discretion by denying the motion to amend; the trial court had no discretion to abuse.

# Conclusion

Our decision is not rooted in this Court's opinion of the merits of Brooks' once-prospective claims. We recognize the gravity of Brooks' allegations against USATF and the impact her heat exhaustion at the Olympic Trials had on her Olympic dreams, which were so close to being realized. Rather, our decision applies and clarifies the procedure for bringing these claims. No doubt, this case involved serious strategic and practical concerns that may have driven counsel's decisions. But the final judgment rule is clear and cannot be affected by a litigant's strategic choices. Because Rule 15(A) does not apply after a final judgment, the trial court was correct in its ruling and we affirm.

Rush, C.J., and Slaughter and Molter, JJ., concur.
Goff, J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT
William Bock, III
Adam Doerr
Kroger, Gardis & Regas, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

John B. Drummy
Jeffrey D. Hawkins
Kightlinger & Gray, LLP

Indianapolis, Indiana

**Goff, J., dissenting.**

I take no issue with the Court's holding, as a general proposition, that a party may not amend their complaint after the trial court issues a final judgment. *See ante*, at 7. But here, in my view, the trial court improperly entered final judgment against the plaintiff in the first place. And without such judgment barring her motion to amend, the plaintiff could have proceeded to trial on her negligence claims. Thus, I respectfully dissent from the Court's opinion denying relief to the plaintiff here.

## I. Brooks moved to amend her complaint before the statute of limitations expired.

After suffering heat-related injuries while competing at the 2020 Olympic Trials in Eugene, Oregon, Taliyah Brooks filed a declaratory-judgment action against USATF in the Marion Superior Court. In her complaint, filed November 29, 2022, Brooks asked the trial court to (1) declare the Agreement unenforceable and (2) issue a permanent injunction that would prevent USATF from relying on or seeking to enforce the Agreement. Appellant's App. Vol. 2, p. 28. Though she included no separate count for negligence, her complaint asserted that USATF had been "negligent" in conducting the event and that she had suffered injuries because of USATF's breach of its duty of care. *Id.* at 47.

In April 2023, Brooks moved for partial summary judgment, asking the trial court to find the Agreement unenforceable as an unconscionable contract of adhesion. Brooks requested a ruling ten days before the June 26 statute of limitations expired so she could amend her complaint to pursue her tort claims. When asked about this procedural variance at a hearing the following month, Brooks responded that, to avoid potentially "insurmountable" litigation costs that she'd be subject to by the Agreement's indemnification clause, she would pursue the tort claims only if the court declared the Agreement unenforceable. Tr. Vol. 2, p. 12.

On June 2, USATF responded and cross-moved for summary judgment, asking the trial court to find the Agreement enforceable. A week later, Brooks filed her opposition to USATF's summary-judgment motion and

requested a ruling by June 24—two days before the statute of limitations expired. On June 21, the trial court resolved the competing summary-judgment motions by denying Brooks' and granting USATF's. Two days later, on June 23, Brooks moved to amend her complaint to add claims for negligence (among other things) and to stay the proceedings on her proposed tort claims. Because the statute of limitations had not yet expired by then, Brooks could have proceeded to trial on her negligence claims had the trial court not entered summary judgment in USATF's favor. The Court's opinion, however, bars this possibility by summarily affirming the Court of Appeals' holding on the issue. *Ante*, at 7 n.2. For the reasons below, I would hold otherwise.

## II. Because the Agreement is unenforceable on grounds of public policy, the trial court erred by entering summary judgment in USATF's favor.

Indiana courts recognize a "very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties." *Trotter v. Nelson*, 684 N.E.2d 1150, 1152 (Ind. 1997) (quotation marks and citation omitted), *abrogated on other grounds by Liggett v. Young*, 877 N.E.2d 178 (Ind. 2007). But a contract may be void if it's unconscionable or if it contravenes public policy. *Id.*; *Ransburg v. Richards*, 770 N.E.2d 393, 396 (Ind. Ct. App. 2002). Here, Brooks argues the Agreement amounts to an unconscionable contract of adhesion and that its substantive terms violate public policy.[1] Though I reject the proposition that the Agreement

---

[1] Brooks also argues that the Agreement is unenforceable because it does not include clear and unequivocal language referring to negligence and did not explicitly obligate her to indemnify USATF for USATF's own negligence. Appellant's Br. at 31–37. *See Ft. Wayne Cablevision v. Ind. & Mich. Elec. Co.*, 443 N.E.2d 863, 868 (Ind. Ct. App. 1983) (recognizing that Indiana courts have long disfavored "indemnification duties which the indemnitor did not knowingly assume"). For the reasons set forth by the Court of Appeals, I find no merit in this argument. *See Brooks v. USA Track & Field, Inc.*, 247 N.E.3d 1, 15–18 (Ind. Ct. App. 2024).

amounts to an impermissible contract of adhesion,[2] I agree with Brooks that it violates public policy.

Generally, indemnity clauses or "exculpatory agreements are not against public policy" in Indiana. *McAdams v. Foxcliff Ests. Cmty. Ass'n, Inc.*, 92 N.E.3d 1144, 1150 (Ind. Ct. App. 2018) (quotation marks and citation omitted). However, Indiana courts have refused to enforce private agreements that "contravene statute" or "that are otherwise contrary to the declared public policy" of the state. *Trotter*, 684 N.E.2d at 1153 (quotation marks and citation omitted). If the agreement falls into the latter category, the court must balance five relevant factors: (1) the nature of the contract's subject matter, (2) the strength of the underlying public policy, (3) the likelihood that refusal to enforce the bargain or term will further that policy, (4) the seriousness of the forfeiture suffered by the party attempting to enforce the bargain, and (5) the parties' relative bargaining power and freedom to contract. *Id.*

In *Ransburg*, the Court of Appeals applied these factors in considering an exculpatory clause in residential leases insulating the landlord from liability for personal injuries purportedly caused by the landlords' negligence. 770 N.E.2d at 394, 396. In declaring such a clause void as against public policy, the court cited "the vast number of people clauses like these affect, the inequality of bargaining power caused by the need for housing, the fact that people who are not parties to the contracts could suffer as a result of such clauses," as well as "the desire to promote responsible maintenance by landlords to avoid personal injuries by tenants and third parties." *Id.* at 402–03.

Applying the *Trotter* factors here, in my view, leads to the same conclusion—*i.e.*, that the Agreement's indemnification clause contravenes public policy.

---

[2] Given her advanced education and extensive athletic experience, Brooks was "capable of understanding [the Agreement's] terms, consented to them, and could have rejected the [A]greement with impunity." *See Adsit Co. v. Gustin*, 874 N.E.2d 1018, 1023 (Ind. Ct. App. 2007).

The subject matter of the Agreement is a Waiver and Release of Liability for an athlete's participation in a track and field event—an event described by USATF as "inherently dangerous" and as representing "an extreme test of a person's physical and mental limits." Appellant's App. Vol. 6, p. 165. Despite these dangers, the indemnification clause amounts to a "blanket release" of USATF from negligence, *see Ransburg*, 770 N.E.2d at 398, precluding recovery for injuries related to USATF events "*without limitation*," Appellant's App. Vol. 6, p. 165 (emphasis added). What's more, the blanket release applies not just to USATF but also to

> its members, clubs, associations, sport disciplines and divisions; United States Olympic Committee (USOC); the event directors, the host organization and the facility, venue and property owners or operators upon which the Event takes place; and any other organizers, promoters, sponsors, advertisers, coaches and officials for this Event; law enforcement agencies and other public entities providing support for the Event; and each of their respective parent, subsidiary and affiliated companies, officers, directors, partners, shareholders, members, agents, employees and volunteers.

*Id.*

Thus, the clause could be read to (for example) prevent Brooks from suing medical providers for malpractice if they injured her while treating her for excessive heat exposure at the event. It could also be read to prevent her from suing law-enforcement agencies, volunteers, or "other public entities" supporting the event for something like sexual assault on grounds that she agreed to hold those persons and entities harmless for any "inadequate safety measures," "situations beyond the immediate control of the Event Organizers," or some "other undefined, not readily foreseeable and presently unknown risks and dangers." *See id.*

Given its substantive breadth and the comprehensive scope of entities and people it indemnifies, the Agreement "contravenes the long established common law rules of tort liability." *See Ransburg*, 770 N.E.2d at

402. At common law in Indiana, "persons responsible for conducting or supervising a sporting event" have a general duty to "exercise ordinary and reasonable care" for the safety of the event's participants and spectators. *Beckett v. Clinton Prairie Sch. Corp.*, 504 N.E.2d 552, 553, 554 (Ind. 1987). To be sure, in determining the scope of liability, courts may consider the "ordinary hazards incidental to a sporting activity, and the extent of presumed awareness thereof by participants and spectators." *Id.* at 554. But these considerations otherwise do "not operate to diminish the required standard of ordinary and reasonable care" for such persons. *Id.* Enforcement of the indemnification clause here, however, "destroys the concept of negligence" in this context. *See Ransburg*, 770 N.E.2d at 400.

Of course, under the indemnification clause, USATF and the other "Released Parties" were still potentially on the hook for "gross negligence and/or willful misconduct." Appellant's App. Vol. 6, p. 165. But the Agreement is drafted in such a way as to discourage even those claims. As Brooks points out, the "causation hurdle is a significant impediment to claims against USATF for intentional or reckless misconduct" because it requires athletes to pay for expenses "of any kind or nature," including USATF's attorney's fees, unless the athlete *prevails* in his or her lawsuit, effectively discouraging athletes from suing USATF for *any* misconduct, no matter how egregious.[3] *See* Appellant's Br. at 13, 44. It might be a different thing if the Agreement here leveled the playing field a bit by entitling the "prevailing party" to "attorney's fees" or "reasonable attorney's fees," like many (if not most) contracts do. *See, e.g.*, *Harrison v. Thomas*, 761 N.E.2d 816, 821 (Ind. 2002) (discussing a contract with such language). But the indemnification clause contains *no such reciprocal obligation* for USATF, making the stakes much, *much* higher for the potential athlete-plaintiff.

What's more, the indemnification clause here affects not just Brooks but, rather, a "vast number of people." *See Ransburg*, 770 N.E.2d at 402.

---

[3] In fact, this is the very reason Brooks first sought a declaratory judgment on the Agreement's unenforceability before suing USATF for negligence.

For example, in 2021, according to USATF's own reporting, a total of 93,354 USATF members signed the very same agreement. Appellee's Br. at 49. And this figure, USATF points out, was "significantly lower" compared to non-COVID years. *Id.* So, this is not a case in which we're "faced merely with the theoretical duty of construing a provision in an isolated contract specifically bargained for" by the USATF and "one [athlete] as a purely private affair." *See Ransburg*, 770 N.E.2d at 400 (citation omitted). Rather, this case implicates a "matter of public interest" in that we're "asked to construe an exculpatory clause, the generalized use of which may have an impact upon thousands of potential [athletes]." *See id.* (quotation marks and citation omitted). Judicial enforcement of the clause, then, stands at odds with the "strong public policy" that "favors[s] the encouragement of participation in athletic activities." *See Pfenning v. Lineman*, 947 N.E.2d 392, 403 (Ind. 2011).

Finally, though the Agreement may not have been an impermissible contract of adhesion, Brooks and other athletes, unlike USATF, have *zero* bargaining power over the terms of the indemnification clause.

For these reasons, I would declare the Agreement void as against public policy.

# Conclusion

In sum, the trial court, in my view, erred by entering summary judgment in USATF's favor because the Agreement here contravenes public policy. And had the trial court ruled otherwise, Brooks could have proceeded to trial on her negligence claims because, at the time she filed her motion to amend the complaint, the statute of limitations had not yet expired. Accordingly, I respectfully dissent from the Court's opinion, denying relief to Brooks.